[Sac. No. 829.   Department Two. — August 12, 1901.]

J. M. BURNS, an Infant, by MICHAEL BURNS, Guardian ad Litem, Appellant, v. TRUMAN CLARK et al., Respondents.

GOLD FOUND UPON PUBLIC LAND — OWNERSHIP — EXTRACTION BY LABORER — EXCAVATION FOR MILL SITE — CONVERSION. — A laborer employed by the owners of mines to excavate and grade a quartz-mill site on public land, who discovered, and extracted from the upper edge of the sloping rock left by the excavation, a pocket of gold and gold-bearing rock, not included in any mineral location, and which he appropriated as his own, acquired title thereto, as first taker, under the laws of the United States, and can recover the value thereof from his employers, who wrongfully seized and converted the same to their own use.

ID. — GOLD NOT ACQUIRED " BY VIRTUE OF EMPLOYMENT " — CONSTRUCTION OF CODE. — The gold was not acquired by the laborer " *by virtue* of his employment," within the meaning of section 1985 of the Civil Code. It was not dug out by him in the course of his work, but independently of it, and for the sole purpose of extracting the metal; and even if it had been taken out in the course of the excavation and removal of waste material, the gold, having no other owner, would belong to the first occupant. The expression, " by virtue of his employment," has no application to acquisitions not coming within its scope or purpose, though they may be acquired by reason of the employment.

APPEAL from a judgment of the Superior Court of Tuolumne County and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion.

J. C. Webster, and E. W. Holland, for Appellant.

The discoverer of gold in the public domain is entitled thereto. (*Forbes* v. *Gracey*, 94 U. S. 762; Civ. Code, sec. 1006; *Martin* v. *Browner*, 11 Cal. 12.) An employee who finds property in the course of his employment does not find by virtue thereof, and the property found does not belong to the employer. (*Bowen* v. *Sullivan*, 62 Ind: 281;[1] *Hamaker* v. *Blanchard*, 90 Pa. St. 377;[2] *Durfee* v. *Jones*, 11 R. I. 588;[3] *New York etc. R. R. Co.* v. *Haws*, 56 N. Y. 175; *Bailey* v. *State*, 52 Ind. 462;[4] *Hillsboro Nat. Bank*

[1] 30 Am. Rep. 172.          [3] 23 Am. Rep. 529.
[2] 35 Am. Rep. 664.          [4] 21 Am. Rep. 187.

v. *Hyde*, 7 N. D. 400; *Bridge* v. *Hawksworth*, 7 Eng. Law & Eq. 424; *Tatum* v. *Sharpless*, 6 Phila. 18.)

F. W. Street, and Reinstein & Eisner, for Respondents.

The gold was discovered by virtue of the employment, and belonged to the employers. (Civ. Code, sec. 1985.) The occupancy of the land gave title to the employers. (Civ. Code, sec. 1006; *Lawrence* v. *Fulton*, 19 Cal. 690; *McIntyre* v. *Sherwood*, 82 Cal. 143.)

SMITH, C.—Appeal from a judgment for the defendants and from an order denying the plaintiff's motion for a new trial. The suit was brought for the conversion of certain gold and gold-bearing rock, of which, it is alleged in the complaint, the plaintiff was, on the day named, the "owner . . . and lawfully possessed," and which, it is alleged, the defendants "wrongfully and unlawfully, and against the will of [plaintiff], took and carried away," and "converted . . . to their own use."

The facts of the case, as found by the court, are, that the defendants Schoenfeld, Adler, and James, who were the owners of certain mines, employed the plaintiff as a laborer to assist in the grading of a mill site on the public lands, for the use of their mines, and that "plaintiff, while working for said defendants, . . . in digging and leveling off a grade for a quartz-mill, discovered and dug out of said grade a pocket of quartz gold of the value of about six hundred dollars; that the plaintiff and his co-laborers gathered up said gold and gold-bearing quartz in a gold-pan, and took the same to the office and delivered it to the defendant . . . Bleck" (the superintendent), "who took possession of said gold for his employers"; but there was no evidence to justify the finding that the plaintiff took the gold to Bleck, or that he delivered it to him. The evidence, without contradiction, was to the effect that Clark (the overseer) took it from the defendant and delivered it to Bleck.

There is no finding as to the plaintiff's alleged possession of the gold at the date named in the complaint. All that is found is, that he "was not lawfully possessed of" it. Nor is there any finding as to the plaintiff's intention to appropriate the gold when he took possession of it, though the plaintiff testified explicitly that such was his intention. It must be

assumed, therefore, for the purposes of this decision, that the plaintiff, on discovery, reduced the gold to possession with intent to appropriate it to himself, and that it was taken from his possession by Clark, the agent of the defendants Schoenfeld & Co. Otherwise, assuming these points to be material, it would be necessary to order a new trial for lack of findings, or for insufficiency of the evidence to justify the finding as to the delivery of the gold to Bleck by the plaintiff.

*Prima facie*, these facts being assumed, the plaintiff was entitled to recover. Mere occupancy of a thing, as against all except the state and the owner, is a sufficient title (Civ. Code, sec. 1006); and where things are found that have no owner, "they belong, as in a state of nature, to the first occupant or fortunate finder." (2 Blackstone's Commentaries, 402; 1 Id. 295; 2 Kent's Commentaries, 356.) And in the case of valuable mineral deposits, the title of the first taker is confirmed by express statutory grant. (U. S. Rev. Stats., sec. 2319; *Forbes* v. *Gracey*, 94 U. S. 762.) The title of the plaintiff must therefore prevail, unless, on the facts found, a better right is disclosed in the defendants; and whether or not this is the case, is the question to be considered.

Such a right is claimed by the respondents on two grounds, namely: 1. On the alleged ownership of the land out of which the gold was taken; and 2. That the gold was acquired by the plaintiff "by virtue of his employment."

1. With regard to the former ground, the contention is, that the land on which the gold was found was in the actual occupancy of the defendants, and consequently, as against all the world except the government, their title was good by occupancy. (Civ. Code, sec. 1006.) This contention involves two propositions,—one of fact and one of law,—neither of which, we think, can be sustained.

With regard to the fact, it does not appear from the findings that the gold was discovered on land occupied by the defendants. The ground was public land of the United States, and the defendants had entered upon it for the purpose of grading a site for a quartz-mill. But there was no location of the land with a view of acquiring title under the laws of the United States (U. S. Rev. Stats., sec. 2337; 1 Lindley on Mines, sec. 519), or, it was stipulated, "location of any kind, and no monuments or marks to show its boundaries." The occupancy of the defendants, therefore, assuming it to be co-extensive with

the intention with which they entered, cannot be regarded as extending beyond the level space graded for the site of the mill, and for use in connection therewith. But the gold was not found within the limits of this space; and if the finding of the court that it was "discovered and dug out of said grade" is to be thus construed, it has no support in the evidence. The gold was discovered at the northwest corner of the excavation made in the hill, and according to the evidence of all the witnesses, at or close to the upper edge of the sloping rock left by the excavation, and according to some of the witnesses, one or two feet beyond. There is no finding whether it was within or without the outer line of the actual excavation, or of the excavation intended, except the finding that it was "discovered and dug out of the grade." Nor, unless the term "grade" be limited to the level space graded for the site of the mill, can any very definite sense be assigned to this finding. (Bouvier's Law Dictionary, word "Grade"; *Little Rock* v. *Citizens Street Ry. Co.*, 56 Ark. 32, 33.)

But, whether the gold was found within or without the outer line of the excavation, there is nothing in the findings or the evidence to show that the defendants intended to occupy any land beyond the foot of the excavation in the rock, or to appropriate any land beyond it, for any purpose; and with reference to the ground actually graded or leveled, or to be graded or leveled, the appropriation was not with a view of acquiring title to the land, but for a particular purpose, which, in the absence of evidence or finding to the contrary, must be presumed to have been temporary. Such an occupation is entitled to protection against unlawful intrusion, but is insufficient to give title, real or presumptive, to the land. To constitute foundation of title, the occupancy must be with the intent or design to acquire the ownership of the thing occupied. (Bouvier's Law Dictionary, word "Occupancy," and authorities cited.)

Nor, were the contention of the defendants otherwise good, could any title to mineral lands be acquired by occupancy, except for the purpose of mining or extracting the minerals. (U. S. Rev. Stats., sec. 2319; *McClintock* v. *Bryden*, 5 Cal. 97;[1] Lindley on Mines, secs. 216 et seq., 219.) The entry of the defendants in this case was not for this purpose, but for the pur-

[1] 63 Am. Dec. 87, 91 et seq.

pose of establishing a mill site; which was permissible only on non-mineral land.   (U. S. Rev. Stats., sec. 2337; Lindley on Mines, secs. 519 et seq.)

2. The remaining contention of the respondents is that the gold was acquired by the plaintiff "by virtue of his employment," and hence, under the provisions of section 1985 of the Civil Code, became the property of his employers, the defendants.   But whatever be the meaning of the provision cited, there is no finding that the gold was so acquired.   All that is found is, that "plaintiff, while working for said defendants, . . . in digging and leveling off a grade," etc., discovered the gold, etc.   This is not a finding that the plaintiff discovered the gold in digging out and leveling off the grade, but that he found it while working for the defendants in that way.   The expression is not unambiguous, but this seems to be the natural construction, and is more in accord with the facts as shown by the evidence, which were, that though the gold may have been discovered by the plaintiff while working for the defendants, it was dug out by him, not in the course of his work, but independently of it, and for the sole purpose of extracting the metal.

But, were the finding more explicit, and did it appear that the gold was discovered and dug out in digging and leveling the grade, the result would not be different.   The defendants were engaged in excavation, not for the minerals, but for the purpose of removing and throwing away the matter excavated, —or, it may be said, the taking of the matter excavated was with the purpose of abandoning it.   Had the object, or one of the objects, of the excavation been to obtain the gold, any gold found by an employee would doubtless belong to his employers.   But the gold found by the plaintiff was property without owner, or intending owner, and therefore subject to his right of appropriation by occupancy.   The case is therefore the same in principle as that in *Bowen* v. *Sullivan*, 62 Ind. 281,[1] where the property was found by the employee in the course of her employment, and in the similar cases of *Hamaker* v. *Blanchard*, 90 Pa. St. 377,[2] and *Durfee* v. *Jones*, 11 R. I. 588.[3]

It is not to be supposed that the intent of the provision in section 1985 of the Civil Code was to alter the established law

---

[1] 30 Am. Rep. 172.          [3] 23 Am. Rep. 529.

[2] 35 Am. Rep. 664.

in this respect. Rather it is to be construed as but an expression of the familiar principle that forbids an agent or trustee from using the trust property or powers conferred upon him for his own benefit, and which, in case of his doing so, requires him to account for the profits. (Wharton on Agency, secs. 231, 236 et seq.; Civ. Code, secs. 2229, 2237; 1 Story on Trustees, secs. 321 et seq., 323.) The term "virtue," as in the cognate expression, "*virtute officii,*" is here used to denote merely the power or authority proceeding from the employment; and the expression, "by virtue of his employment," has no application to acquisitions not coming within its scope or purpose. (Winfield's Adjudged Words and Phrases; 3 Esp. 541, note; *People* v. *Schuyler,* 4 N. Y. 187; *Seeley* v. *Birdsall,* 15 Johns. 267.) Had the object of the grading been the acquisition of the ores to be extracted, the provision would, no doubt, apply; but the casual finding of gold by an employee in the course of an employment in no way related to such an object, though doubtless an acquisition made by reason or cause of the employment cannot with propriety be said to have been by virtue of it.

I advise that the judgment and order appealed from be reversed.

Chipman, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

Henshaw, J., McFarland, J., Temple, J.

Hearing in Bank denied.